[No. A065161. First Dist., Div. Five. May 30, 1995.]

THOMAS LAUDERBACH et al., Plaintiffs and Respondents, v.
FRANK S. ZOLIN, as Director, etc., Defendant and Appellant.

**COUNSEL**

Daniel E. Lungren, Attorney General, Henry G. Ullerich, Assistant Attorney General, William S. Clark and T. Michelle Laird, Deputy Attorneys General, for Defendant and Appellant.

Linton Joaquin, Karen Miksch, Stephen A. Rosenbaum, Lucas Guttentag, Lee Gelernt, Robert de Vries, Alan Schlosser, Ignatius Bau, Nervo & Bean and Angela M. Bean for Plaintiffs and Respondents.

## OPINION

**HANING, J.**—The California Department of Motor Vehicles (DMV) and its director, Frank S. Zolin, appeal a judgment granting respondents a permanent injunction requiring the DMV to issue new and renewal vehicle registrations and renewal drivers' licenses and identification (ID) cards to aliens who are ineligible for a Social Security account number (SSN).[1]

### FACTS

With the exception of Thomas Lauderbach, a United States citizen and lawful resident of California, respondents are foreign nationals whose applications for renewal drivers' licenses or ID cards, or new and renewal vehicle registrations have been rejected by the DMV due to their failure to provide an SSN. Alleging that their "immigration status" rendered them ineligible for SSN's, respondents obtained an injunction restraining the DMV from "implementing or enforcing [relevant provisions of the Vehicle Code] to deny individuals the issuance or renewal of a motor vehicle registration, the renewal of a driver's license, or the renewal of an identification card where an individual lacks a[n SSN] and is legally ineligible for a[n] SSN."

Following issuance of the trial court's injunction and while this appeal was pending, we issued a writ of supersedeas.

### DISCUSSION

The real questions presented by this appeal are: (1) whether the DMV is required to issue drivers' licenses, ID cards and vehicle registrations to persons whose presence in the United States is not authorized by federal law; and (2) whether foreign nationals who are lawfully residing in California but are ineligible for SSN's, assuming such a class exists, are entitled to those documents.

Title 42 United States Code section 405(c)(2)(C)(i) provides: "It is the policy of the United States that any State . . . may, in the administration of

---

[1]The judgment does not affect the DMV's ability to deny a registration, driver's license or ID card to an individual who is legally eligible for an SSN but lacks one due to voluntary noncompliance with Social Security Administration (SSA) rules or regulations.

any tax, general public assistance, driver's license, or motor vehicle registration law within its jurisdiction, utilize the [SSN's] issued by the Secretary for the purpose of establishing the identification of individuals affected by such law, and may require any individual who is or appears to be so affected to furnish to such State . . . or any agency thereof having administrative responsibility for the law involved, the [SSN] . . . issued to him . . . ."

Effective January 1, 1992, the Trial Court Realignment and Efficiency Act (the Act) requires the controller to offset amounts overdue and unpaid to counties for fines, bail or vehicle parking penalties from tax refunds and California State Lottery winnings. (Legis. Counsel's Dig., Assem. Bill No. 1297 (1991-1992 Reg. Sess.) Among other things, the Act amended sections 4150, 4150.2, 12800, 22651, 22651.7, 40610 and 42007 of the Vehicle Code[2] and added sections 4760.1, 12808.1, 40512.6, 40611 and 42008 thereto. Sections 4150, subdivision (a), 4150.2, subdivision (a) and 12800 require, in relevant part, that applications for original and renewal vehicle registrations and drivers' licenses contain the applicant's SSN. Other added and amended sections establish a system for collecting outstanding court fines and withholding vehicle licenses and registrations when such fines have not been paid.

Also effective January 1, 1992, the Legislature enacted section 1653.5 which provided, inter alia, that all forms prescribed by the DMV for use by applicants for the issuance or renewal of drivers' licenses, ID cards and vehicle registrations must contain a section for the applicant's SSN. It has since been amended, effective January 1, 1995, to provide that applications for vehicle registration documents only, shall contain a section for the applicant's driver's license or ID card number; SSN's are still required for drivers' licenses and ID cards. The statute provides that the SSN's are not public records and may not be disclosed except for "(f) (1) Responding to a request for information from an agency operating pursuant to, and carrying out the provisions of, Part A (Aid to Families with Dependent Children), or Part D (Child Support and Establishment of Paternity), of Subchapter IV of Chapter 7 of Title 42 of the United States Code. [¶] (2) Implementation of Section 12419.10 of the Government Code [offset of fines, bails and parking penalties from tax refunds and lottery winnings]. [¶] (3) Responding to information requests from the Franchise Tax Board for the purpose of tax administration."

Section 12801.5, enacted in 1993 and effective March 1, 1994, provides, in relevant part: "(a) Notwithstanding any other provision of law, the [DMV] shall require every applicant for an original driver's license or [ID] card to

---

[2]Unless otherwise indicated, all further statutory references are to the Vehicle Code.

submit satisfactory proof that the applicant's presence in the United States is authorized under federal law. [¶] (b) The [DMV] shall not issue an original driver's license or [ID] card to any person who does not submit satisfactory proof that the applicant's presence in the United States is authorized under federal law. [¶] . . . [¶] (c) The [DMV] shall adopt regulations to carry out the purposes of this section, including procedures for, but not limited to, (1) verifying that the applicant's presence in the United States is authorized under federal law, (2) issuance of temporary licenses pending verification of status, and (3) appeals hearings from denials of licenses [or] temporary licenses *or [ID] cards.*" (Italics added.)[3]

The DMV began collecting SSN's on applications for commercial drivers' licenses in 1989, for noncommercial licenses in January 1992 and for ID cards in June 1992. As of February 1994 SSN collection on applications for vehicle registrations had not been implemented.

It is undisputed that the Legislature's purpose in enacting section 1653.5 was to help affected agencies seek "more effective ways to locate the whereabouts of 'errant parents' for purposes of carrying out child support programs and directives." (Sen. Transportation Com. Rep. on Sen. Bill No. 395 (Mar. 25, 1991); see Legis. Counsel's Dig., Sen. Bill No. 395 (1991-1992 Reg. Sess.).) The parties do not dispute the legitimacy of this purpose.

As previously noted, with the exception of the lone citizen, the named respondents are ineligible to obtain SSN's because of their "immigration status." Although their status is not fully explained, it appears that the majority of those whose immigration status prevents them from obtaining SSNs are not authorized by federal law to be present in the United States.

An SSN may be assigned to persons who meet specified evidentiary requirements (20 C.F.R. § 422.107 (1990)) if the applicants are: (1) United States citizens; (2) aliens lawfully admitted to the United States for permanent residence or under the authority of law permitting them to work in the United States; or (3) aliens legally in the United States for a nonwork purpose. (20 C.F.R. § 422.104(a) (1991).) An SSN may be assigned for a nonwork purpose to aliens who cannot provide the evidence of alien status required by 20 Code of Federal Regulations, section 422.107(e) if such evidence does not exist, if other evidence is provided and if (1) the alien resides either in or outside the United States and an SSN is required by law as a condition of the alien's receiving a federally funded benefit to which the

---

[3]The highlighted text was added effective January 1, 1995. (Stats. 1994, ch. 675, § 5.)

alien has established entitlement or (2) the alien resides outside the United States and needs an SSN for federal tax reporting purposes and the Internal Revenue Service and the SSA have agreed that the individual needs a number. (20 C.F.R. § 422.104(b) (1991).)

The foregoing makes clear that persons whose presence in the United States is not authorized by federal law are not entitled to obtain SSN's. It is also clear from section 12801.5 that the DMV is precluded from issuing original drivers' licenses and ID cards to persons whose "presence in the United States is [not] authorized under federal law." Respondents acknowledge this, but nevertheless argue that section 1653.5 does not authorize the DMV to deny the subject documents to persons ineligible to obtain SSN's, focusing on the statutory reference to the "applicant's" SSN, which they contend means that the applicant is presumed to have an SSN or be eligible for one. They also focus on section 12801.5's prohibition against issuance of "original" drivers' licenses or ID cards to persons whose presence in the United States is not authorized by federal law, in support of their contention that they are entitled to the renewal of expired documents.

At oral argument respondents took the position that even if their presence in the United States is unlawful they are entitled to the renewal of a driver's license or ID card. If this position were accepted it would produce some bizarre results. For example, it would require the DMV to issue renewal documents to such persons as (1) those who obtained their original documents fraudulently because they were not lawful residents of California when the documents were initially issued, (2) those who had been ordered deported, but were evading federal authorities, and (3) those who had actually been deported but had reentered the country unlawfully.

Statutory interpretation is a question of law which we decide de novo. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Schwetz* v. *Minnerly* (1990) 220 Cal.App.3d 296, 302 [269 Cal.Rptr. 417].) California has numerous statutes governing the issuance and renewal of drivers' licenses, ID cards and vehicle registrations. In resolving the issues involved in this case we cannot focus on any single statute or phrase, but must consider the entire statutory scheme. (*Cousins* v. *Weaverville Elementary School Dist.* (1994) 24 Cal.App.4th 1846, 1854 [30 Cal.Rptr.2d 310].) Sections 1653.5, 4150, 4150.2 and 12800 all refer to both original and renewal drivers' licenses, ID cards and vehicle registrations. We do not interpret the Legislature's intent in this comprehensive statutory scheme as prohibiting original drivers' licenses and ID cards to persons whose presence in the United States is not authorized by federal law, but allowing such

persons to renew existing documents. We think it more likely that the reference to "original" documents in section 12801.5 refers to "permanent," as opposed to temporary documents. We infer this from section 12801.5's authorization to issue temporary licenses pending verification of the applicants' immigration status.

The next question is whether aliens whose presence in the United States is authorized by federal law, but who are ineligible for SSN's, may obtain California drivers' licenses and ID cards if otherwise qualified. The parties do not agree on whether such a class exists or, if it does, on which individuals come within such a class. In the trial court appellants appeared to acknowledge the existence of such a class, but advocate a contrary position on appeal.[4]

The only purpose expressed in section 1653.5's legislative history is to provide affected agencies with "more effective ways to locate the whereabouts of 'errant parents' for purposes of carrying out child support programs and directives." (Sen. Transportation Com. Rep. on Sen. Bill 395, (Mar. 25, 1991); see Legis. Counsel's Dig., Sen. Bill No. 395 (1991-1992 Reg. Sess.).) The SSN requirement was designed to supplement existing, available biographical data about applicants for identification purposes only. Nothing in the remaining statutory scheme or its legislative history suggests that the SSN requirement was intended to establish new eligibility criteria. Obviously, possession of an SSN has no relation to one's ability to safely operate a motor vehicle, and there is no statutory proscription against issuance of ID cards to aliens lawfully residing in California.

Consequently, if such persons exist, we conclude that those aliens whose presence in the United States is authorized under federal law, but are ineligible to obtain SSN's, are entitled to the subject DMV documents if otherwise qualified therefor.

Respondents contend the DMV's policy violates the equal protection clauses of the state and federal Constitutions, arguing that the policy fails to distinguish between those applicants who possess SSN's but are "unwilling" to reveal them, and those who are "unable" to obtain them. This argument does not address the real issue: whether the DMV is required to issue the subject documents to persons whose presence in the United States is not authorized by federal law. We have concluded there is no such requirement.

---

[4]At the hearing below, the DMV's attorney conceded, "it is quite possible that whoever drafted the legislation did not realize that there were classes of persons who were residents of California with one status or another who do not have [SSN's]."

Respondents further contend the DMV policy violates the federal Privacy Act (5 U.S.C. § 552a), citing a note which states: "It shall be unlawful for any Federal, State or local government agency to deny any individual any right, benefit or privilege provided by law because of such individual's refusal to disclose his social security account number." (5 U.S.C. § 522a note; the quoted language is contained in Pub.L. No. 93-579 (Dec. 31, 1974) § 7(a)(1), uncodified.) However, the act specifically defines "individual" as "a citizen of the United States or an alien lawfully admitted for permanent residence." (5 U.S.C. § 522a(a)(2).) Further, we have previously noted an exception to the federal Privacy Act in 42 United States Code section 405(c)(2)(C)(i), *ante*, which permits states to require and obtain SSN's "in the administration of any tax, general public assistance, driver's license, or motor vehicle registration law . . . ."

Respondents argue that "an ID card has nothing to do with administering general public assistance, licensure or vehicle registration. The fact that it is issued by DMV is simply a matter of convenience for the state." This argument overlooks the fact that the purpose of the SSN requirement is to aid in the location of parents who have deliberately failed to support their children, many of which children then become entitled to public assistance. The SSN's enable the state to locate the errant parents for purposes of enforcing the child support laws.

Finally, respondents contend the DMV violated the Administrative Procedure Act (APA) (Gov. Code, § 11500 et seq.) "by failing to provide notice of rulemaking or an opportunity for public comment." The short answer to this contention is that the legislative enactments which govern this case are not subject to the APA.

## DISPOSITION

We conclude that (1) the DMV is not only authorized, but obligated to require applicants for original and renewal drivers' licenses, ID cards and vehicle registrations to supply their Social Security numbers; (2) persons whose presence in the United States is not authorized by federal law are not entitled to such documents; and (3) any persons whose presence in the United States is authorized by federal law, but who are ineligible for Social Security account numbers are entitled to such documents if otherwise eligible therefor.

The judgment is reversed and remanded with directions to deny respondents' application for the injunction, except as to any persons whose presence in the United States is authorized by federal law, but who are ineligible

to obtain Social Security account numbers and who are otherwise qualified for the documents for which they apply.

Peterson, P. J., and King, J., concurred.

A petition for a rehearing was denied June 29, 1995, and the opinion was modified to read as printed above.