176 F.3d 1202
 99 Cal. Daily Op. Serv. 3882, 1999 Daily
Journal D.A.R. 4962
Donald S. MILLER, Plaintiff-Appellant,
v.
Sally R. REED, California Department of Motor Vehicles;
Daniel E. Lungren, Attorney General, Defendants-Appellees.
 No. 97-17006.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 11, 1999.
Decided May 24, 1999.
 
 Donald S. Miller, El Cerrito, California, and F. Raymond Marks, El Cerrito, California, for the plaintiff-appellant.
 Terry Senne, Deputy Attorney General, Oakland, California, for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California; Saundra B. Armstrong, District Judge, Presiding. D.C. No. CV-96-01942-SBA.
 Before: WOOD, JR.,[1] THOMPSON and THOMAS, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 The California Department of Motor Vehicles ("DMV") rejected Donald S. Miller's application for renewal of his driver's license because he refused to divulge his social security number. Miller's refusal was based on religious grounds. As part of his long-standing and deeply held religious convictions, Miller believes that to reveal his social security number would be tantamount to a sin. Without a valid driver's license from his home state of California, Miller cannot legally drive anywhere in the United States.
 
 
 2
 In an attempt to force California to issue him a driver's license, Miller filed the present lawsuit in the United States District Court for the Northern District of California. Among other claims, he asserted a claim for violation of his civil rights under 42 U.S.C. § 1983. He alleged that California Vehicle Code § 1653.5, which requires the DMV to obtain the social security number of all applicants for new or renewed drivers' licenses, violates his federal constitutional rights to interstate travel and free exercise of religion. Miller also alleged that the juxtaposition of his interstate travel and free exercise rights presents a hybrid constitutional issue requiring strict scrutiny of California Vehicle Code § 1653.5.
 
 
 3
 The district court dismissed Miller's section 1983 claim pursuant to Federal Rule of Civil Procedure 12(b)(6). We have jurisdiction under 28 U.S.C. § 1291, and we affirm. We conclude that by denying Miller a single mode of transportation-in a car driven by himself-the DMV did not unconstitutionally impede Miller's right to interstate travel. We also conclude that Miller's free exercise of religion is not violated by California's valid and neutral requirement that all applicants for a new or renewed driver's license provide a social security number. Finally, Miller does not present a hybrid claim, which would require that we apply strict scrutiny to the DMV's failure to issue him a driver's license, because he has failed to supplement his free exercise of religion claim with another constitutional claim of colorable merit.
 
 
 4
 * FACTS
 
 
 5
 On May 10, 1996, Miller, who had held a valid California driver's license for twenty-three years, applied for renewal of his license. Pursuant to California Vehicle Code § 1653.5, which became effective January 1, 1992, the DMV's renewal form requested Miller's social security number to aid the state in the identification and collection of child support obligations, tax obligations, and delinquent fines, bail, or parking penalties. Cal. Veh.Code § 1653.5. See also Lauderbach v. Zolin, 35 Cal.App.4th 578, 41 Cal.Rptr.2d 434, 436-37 (1995). Miller is single, has no children, and has no outstanding child support obligations, taxes, fines, bail, or parking penalties.
 
 
 6
 Based on his deeply held religious beliefs, Miller refused to supply his social security number. Miller does not belong to any organized religion, but has a long-standing and well-established personal system of theological belief. Miller describes one aspect of his belief as "posit[ing] that the unique defining purpose of life is separate, individual existence" and that "each individual's actions should be in furtherance of the separate evolving identity of each individual during their life." Although Miller has no objection to the use of distinct separate account numbers as identifiers, he believes that "the use of a single common identifier in multiple relationships represents the creation of an external analog of the individual, a surrogate shadow-identity ... which is narrowed and limited by the perceptions and purposes of those using the analog." According to Miller, disclosing his social security number to an entity other than the Social Security Administration contributes to the creation of a "caricature" of his identity as an individual and is "tantamount to a 'sin,' as that term is commonly used."Because of Miller's beliefs, he has refused to provide his social security number in many contexts over several decades, including his application to the State Bar of California to practice law and his applications for practice before this court and the United States Supreme Court.
 
 
 7
 Although Miller was in all other respects qualified for and entitled to receive a renewal of his driver's license, the DMV rejected his application because he failed to supply his social security number, as required by California Vehicle Code § 1653.5.
 
 
 8
 Miller brought suit in the district court against Sally Reed, the Director of the California Department of Motor Vehicles, seeking injunctive relief.[2] Miller's first claim, asserted under 42 U.S.C. § 1983, alleged the violation of his constitutional rights to the free exercise of religion and to interstate travel; his second claim alleged the violation of the Religious Freedom Restoration Act ("RFRA"); and his third claim alleged the violation of his state constitutional right to privacy. Initially, the district court dismissed Miller's first and third claims without prejudice, but did not dismiss his second RFRA claim. After the Supreme Court held in City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), that the RFRA was unconstitutional, the district court granted the defendant's unopposed motion for judgment on the pleadings, entered a final judgment of dismissal, and dismissed the entire action.
 
 
 9
 Miller now appeals the dismissal of his section 1983 claim, in which he alleges that California Vehicle Code § 1653.5 violates his federal constitutional rights to interstate travel and the free exercise of religion.
 
 II
 DISCUSSION
 A. Interstate Travel
 
 10
 Miller contends the DMV violated his fundamental right to interstate travel by depriving him of the use of his primary means of travel, driving an automobile. Miller provides no precedent supporting his contention that, absent a lack of due process, denial of a driver's license is tantamount to denial of a constitutional right.
 
 
 11
 The Supreme Court has recognized a fundamental right to interstate travel. Attorney General of New York v. Soto-Lopez, 476 U.S. 898, 903, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986) (Brennan, J., plurality opinion). Burdens placed on travel generally, such as gasoline taxes, or minor burdens impacting interstate travel, such as toll roads, do not constitute a violation of that right, however. See Kansas v. United States, 16 F.3d 436, 442 (D.C.Cir.1994).
 
 
 12
 Miller does not allege that the primary objective of California Vehicle Code § 1653.5 is to impede interstate travel or that section 1653.5' § regulation of driver licensing treats interstate travelers differently from intrastate travelers. Cf. Soto-Lopez, 476 U.S. at 903, 106 S.Ct. 2317. Instead, because Miller cannot legally drive a car unless his driver's license is renewed, he argues that he has been deprived of an essential mode of transportation. Emphasizing the importance of automobiles in modern society, Miller contends that his right to interstate travel encompasses a fundamental right to drive a car.
 
 
 13
 We have previously held that burdens on a single mode of transportation do not implicate the right to interstate travel. See Monarch Travel Servs., Inc. v. Associated Cultural Clubs, Inc., 466 F.2d 552, 554 (9th Cir.1972) ("A rich man can choose to drive a limousine; a poor man may have to walk. The poor man's lack of choice in his mode of travel may be unfortunate, but it is not unconstitutional."); City of Houston v. FAA, 679 F.2d 1184, 1198 (5th Cir.1982) ("At most, [the air carrier plaintiffs'] argument reduces to the feeble claim that passengers have a constitutional right to the most convenient form of travel. That notion, as any experienced traveler can attest, finds no support whatsoever in [the Supreme Court's right of interstate travel jurisprudence] or in the airlines' own schedules."). The Supreme Court of Rhode Island in Berberian v. Petit, 118 R.I. 448, 374 A.2d 791 (1977), put it this way:
 
 
 14
 The plaintiff's argument that the right to operate a motor vehicle is fundamental because of its relation to the fundamental right of interstate travel is utterly frivolous. The plaintiff is not being prevented from traveling interstate by public transportation, by common carrier, or in a motor vehicle driven by someone with a license to drive it. What is at issue here is not his right to travel interstate, but his right to operate a motor vehicle on the public highways, and we have no hesitation in holding that this is not a fundamental right.
 
 
 15
 374 A.2d at 794 (citations and footnotes omitted).
 
 
 16
 Miller does not have a fundamental "right to drive." In Dixon v. Love, 431 U.S. 105, 112-16, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977), the Supreme Court held that a state could summarily suspend or revoke the license of a motorist who had been repeatedly convicted of traffic offenses with due process satisfied by a full administrative hearing available only after the suspension or revocation had taken place. The Court conspicuously did not afford the possession of a driver's license the weight of a fundamental right. See also Mackey v. Montrym, 443 U.S. 1, 10, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979); Bell v. Burson, 402 U.S. 535, 539, 542-43, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).
 
 
 17
 In sum, Miller does not have a fundamental right to drive a motor vehicle, and the DMV did not unconstitutionally impede his right to interstate travel by denying him a driver's license.
 
 B. Exercise of Religion
 
 18
 In Employment Division v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the Court analyzed a free exercise of religion claim under a rational basis test. Under this test, a rationally based, neutral law of general applicability does not violate the right to free exercise of religion even though the law incidentally burdens a particular religious belief or practice. Id. at 879, 110 S.Ct. 1595; see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (citing Smith, 494 U.S. at 879, 110 S.Ct. 1595). Applying Smith 's rational basis test to the present case, we conclude that Miller's free exercise claim fails.
 
 
 19
 In Smith, the Supreme Court held: "[T]he right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." 494 U.S. at 879, 110 S.Ct. 1595 (internal quotations and citations omitted). The Court explained: "The government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, 'cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development.' " Id. at 885, 110 S.Ct. 1595 (quoting Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 451, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988)).
 
 
 20
 Miller concedes that California may regulate drivers' licenses and that all applicants for drivers' licenses are required to provide their social security numbers. See Nowlin v. Department of Motor Vehicles, 53 Cal.App.4th 1529, 62 Cal.Rptr.2d 409, 412-14 (1997). He does not deny that section 1653.5 is facially neutral, nor does he allege that section 1653.5 has the object of burdening religion or has more than an incidental effect on religious practices or beliefs. Finally, he does not deny that section 1653.5 is rationally related to California's legitimate interests in locating the whereabouts of errant parents for purposes of carrying out child support programs, collecting tax obligations, and collecting amounts overdue and unpaid for fines, penalties, assessments, bail, and vehicle parking penalties. See id. at 415; Lauderbach, 41 Cal.Rptr.2d at 436-39.
 
 
 21
 We conclude that California Vehicle Code § 1653.5 is a valid and neutral law of general applicability. Under Smith, the DMV's enforcement of it does not violate Miller's right to the free exercise of religion. Cf. Bowen v. Roy, 476 U.S. 693, 701-12, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986) (Burger, C.J., plurality) (foreshadowing the Smith analysis in rejecting a free exercise challenge to the requirement that applicants for a federal welfare program provide social security numbers).
 
 
 22
 Miller contends, however, that Smith does not apply to his claim. He argues (1) Smith is limited to challenges to criminally prohibited conduct and (2) his claim fits within the "hybrid-rights" exception to Smith. Both arguments fail.
 
 
 23
 Although we have indicated in dicta in prior cases that Smith only applies when the challenged law "punishes conduct which constitutes a criminal act," NLRB v. Hanna Boys Center, 940 F.2d 1295, 1305 (9th Cir.1991); see also Vernon v. City of Los Angeles, 27 F.3d 1385, 1393 n. 1 (9th Cir.1994); American Friends Service Comm. Corp. v. Thornburgh, 961 F.2d 1405, 1408 (9th Cir.1991), we have since applied Smith to cases not involving criminally prohibited conduct. See, e.g., Thomas v. Anchorage Equal Rights Comm'n, 165 F.3d 692, 700-07 (9th Cir.1999); Johns v. County of San Diego, 114 F.3d 874, 877 (9th Cir.1997). The Supreme Court has never directly addressed the issue. In Boerne, however, the Court appeared to assume that Smith would apply to local zoning ordinances in the absence of the Religious Freedom Restoration Act. See Boerne, 521 U.S. at ----, 117 S.Ct. at 2171; see also Thomas, 165 F.3d at 700 n. 6 ("[T]he Supreme Court's implicit determination in Boerne that Smith reaches civil, as well as criminal, laws is significant, and controls our analysis."). We now join the other circuits that have considered the issue, and hold that Smith is not limited to challenges to criminally prohibited conduct. See Vandiver v. Hardin County Bd. of Educ., 925 F.2d 927, 932 (6th Cir.1991); Salvation Army v. Department of Community Affairs, 919 F.2d 183, 194-200 (3d Cir.1990).
 
 
 24
 Smith, however, excepts a hybrid-rights claim from its rational basis test. In Smith, the Court distinguished the strict scrutiny imposed in "hybrid situation[s]" in which a law "involve[s] not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections." 494 U.S. at 881-82, 110 S.Ct. 1595. Although the Court "has been somewhat less than precise with regard to the nature of hybrid rights," we recently held that, to assert a hybrid-rights claim, "a free exercise plaintiff must make out a 'colorable claim' that a companion right has been violated-that is, a 'fair probability' or a 'likelihood,' but not a certitude, of success on the merits." Thomas, 165 F.3d at 703, 707. Other circuits have adopted similar or more stringent predicates for a hybrid-rights claim. See, e.g., Swanson v. Guthrie Indep. Sch. Dist. No. I-L, 135 F.3d 694, 700 (10th Cir.1998) ("Whatever the Smith hybrid-rights theory may ultimately mean, we believe that it at least requires a colorable showing of infringement of recognized and specific constitutional rights, rather than the mere invocation of a general right such as the right to control the education of one's child."); Brown v. Hot, Sexy, & Safer Prods., Inc., 68 F.3d 525, 539 (1st Cir.1995) (concluding that the hybrid-rights exception was not triggered because the plaintiffs had not shown interference with an independently protected constitutional right); Kissinger v. Board of Trustees, 5 F.3d 177, 180 (6th Cir.1993) (refusing to recognize a hybrid-rights exception).
 
 
 25
 We hold that a plaintiff does not allege a hybrid-rights claim entitled to strict scrutiny analysis merely by combining a free exercise claim with an utterly meritless claim of the violation of another alleged fundamental right or a claim of an alleged violation of a non-fundamental or non-existent right. See American Friends, 961 F.2d at 1409 (refusing to apply the hybrid-rights exception to a combination of a free exercise claim with an asserted violation of "the right to hire"). Accordingly, neither Miller's chimerical claim of infringement of his right to interstate travel, nor his non-existent claim of a "right to drive," combines with his free exercise claim to create a viable hybrid-rights claim. Thus, Miller's free exercise of religion claim is not subject to strict scrutiny, and the claim fails Smith 's rational basis test.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 The Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit Court of Appeals, sitting by designation
 
 
 [2]
 Miller also sued Daniel Lungren, who was then Attorney General of the State of California. Lungren was dismissed from the case by the district court, and Miller has not appealed that decision. Additionally, Miller originally requested monetary damages, but he abandoned that request for relief prior to the conclusion of the proceedings before the district court