NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JAN 13 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

KRISHNA LUNCH OF SOUTHERN
CALIFORNIA, INC., a California nonprofit
religious corporation; et al.,

Plaintiffs-Appellants,

v.

MONROE GORDON, Jr., Interim Vice
Chancellor of Student Affairs, UCLA, in his
official capacity,

Defendant-Appellee.

No.    18-55316

D.C. No.
2:16-cv-08422-DSF-PLA

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted December 11, 2019
Pasadena, California

Before:  O'SCANNLAIN and PAEZ, Circuit Judges, and SIMON,[**] District Judge.

Krishna Lunch, a nonprofit organization located in southern California,

appeals the district court's dismissal of its free speech, exercise, and association

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Michael H. Simon, United States District Judge for the
District of Oregon, sitting by designation.

claims under the First Amendment of the United States Constitution.[1]  For the reasons that follow, we vacate and remand Krishna Lunch's free speech and free association claims and affirm the district court's dismissal of the free exercise claim.

## I.

The First Amendment, applicable to the states through the Fourteenth Amendment, prohibits government actors from "abridging the freedom of speech." U.S. Const. amend. I.  The First Amendment's free speech protections extend beyond written or spoken words.  *See Hurley v. Irish-American Gay, Lesbian, and Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995).  Conduct "sufficiently imbued with elements of communication" is entitled to constitutional protection.  *Spence v. Washington*, 418 U.S. 405, 409 (1974) (per curiam).  To determine whether an individual's conduct is sufficiently communicative, we consider both the intent of the speaker and the perception of the audience.  *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).  The speaker must demonstrate an "intent to convey a particularized message," and, "in the surrounding circumstances[,] the likelihood [must be] great that the message would be understood by those who viewed it."  *Spence*, 418 U.S. at 410–11.

---

[1] We have jurisdiction under 28 U.S.C. § 1291.  Our review is de novo.  *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002).

2

The viewer need not understand the speaker's "particularized message." *Hurley*, 515 U.S. at 569 (noting that, if the Constitution required a "narrow, succinctly articulable message" or a "particularized message," its protections "would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Shöenberg, or Jabberwocky verse of Lewis Carroll."); *see also Masterpiece Cakeshop, Ltd. v. Col. Civil Rights Comm'n*, 138 S. Ct. 1719, 1742 (2018) (accord). The message need only be "delivered by conduct that is intended to be communicative" and, in context, "be understood by the viewer to be communicative." *Clark*, 468 U.S. at 294.

Krishna Lunch has plausibly pleaded that its distribution of sanctified vegan and vegetarian food ("prasada") is, in context, expressive conduct for purposes of First Amendment protection. While distributing prasada, the organization plans on chanting the names of God and other devotional hymns and songs, speaking with interested students and others of the University of California, Los Angeles ("UCLA") community, distributing religious literature, and displaying signs depicting reincarnation, animal protectionism, and other topics related to its followers' beliefs. Drawing all reasonable inferences in favor of Krishna Lunch, we can infer that in these circumstances an onlooker would understand the distribution of food "to be communicative." *Clark*, 468 U.S. at 294; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S.

3

662, 678 (2009) (a complaint is properly pleaded when it contains sufficient information to allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged").  The juxtaposition of Krishna Lunch's signage and discussions with the unexpressive food programs of other vendors plausibly highlights Krishna Lunch's comparatively expressive intent.  And the context of Krishna Lunch's program is not limited to its accompanying, protected speech, *see Rumsfeld v. Forum for Acad. and Inst. Rights, Inc.* (*FAIR*), 547 U.S. 47, 65–66 (2006); the organization's actions are also communicative because of the identity of the organization.  The nature of Krishna Lunch's animal-protectionism beliefs sufficiently imbues its prasada distribution with elements of communication.  *See Spence*, 418 U.S. at 409.

Because Krishna Lunch has plausibly pleaded that its food distribution is expressive conduct, we do not address whether UCLA's restriction passes constitutional muster under *United States v. O'Brien*, 391 U.S. 367 (1968).  We leave this issue for the district court to address in the first instance.  Accordingly, we vacate the court's dismissal of this claim and remand for further proceedings consistent with this disposition.

## II.

While the First Amendment's Free Exercise Clause prohibits government action "prohibiting the free exercise" of religion, *see* U.S. Const. amend. I, it does

4

not ordinarily exempt individuals from complying with neutral and generally applicable laws. *See Emp't Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 878–79 (1990). If a law is neutral and applies generally, we uphold it if it is rationally related to a legitimate state purpose. *See Miller v. Reed*, 176 F.3d 1202, 1207 (9th Cir. 1999). Krishna Lunch has the burden to negate "every conceivable basis which might support" the policy. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993).

UCLA's policy is neutral and generally applicable. It does not by its terms discriminate against a particular religion or favor the exercise (or non-exercise) of religion. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531–33 (1993). And there is no evidence to suggest the policy was motivated by masked, discriminatory intent. *See id.* at 534. The four-times-per-year policy also does not burden *only* religious conduct; it instead chiefly burdens the non-religious, uncommunicative conduct of other off-campus and student organizations serving prepared food on campus.

Krishna Lunch has not negated every conceivable basis that might support the policy. Although UCLA has not yet stated its justification for the policy, Krishna Lunch must negate every rational basis supporting the policy, "whether or not the basis has a foundation in the record." *Heller v. Doe by Doe*, 509 U.S. 312,

5

320–21 (1993). We therefore affirm the district court's dismissal of Krishna Lunch's free exercise claim.

## III.

Finally, for Krishna Lunch to demonstrate that UCLA's policy violates its First Amendment associational freedom, it must plausibly plead that (1) it engages in protected, expressive conduct; (2) UCLA's policy hinders its ability to express its viewpoints, and (3) Krishna Lunch's interest in expressive association outweighs UCLA's interest in maintaining its policy. *See Boy Scouts of America v. Dale*, 530 U.S. 640, 648–59 (2000). The district court dismissed Krishna Lunch's associational claim because it concluded that the organization's prasada distribution was not expressive conduct. Because we hold that Krishna Lunch has plausibly pleaded that its lunch program is expressive conduct, we vacate and remand the court's dismissal of Krishna Lunch's free association claim.

The parties shall bear their own costs on appeal.

**AFFIRMED** in part, **VACATED** and **REMANDED** in part.



*Krishna Lunch of S. Cal. v. Gordon,* No. 18-55316

O'SCANNLAIN, J., concurring in part and dissenting in part:

While I concur in Part 2 of the Court's disposition, I respectfully dissent from Parts 1 and 3, which reverse the dismissal of Krishna Lunch's free speech and free association claims. In my view, Krishna Lunch has failed to state a cognizable free speech, free exercise, or free association claim, and I would affirm the judgment of the district court in its entirety.

I

In order to survive a motion to dismiss the free speech claim, Krishna Lunch must show that the distribution of its sanctified vegan food (prasada) is conduct "sufficiently imbued with elements of communication" worthy of First Amendment protection. *Spence v. State of Washington,* 418 U.S. 405, 409 (1974). To that end, Krishna Lunch must demonstrate 1) an "intent to convey a particularized message" and 2) that, "in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Id.* at 410–11. "[A] narrow, succinctly articulable message is not a condition of constitutional protection," *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston,* 515 U.S. 557, 569 (1995), but the message must be "delivered by conduct that is intended to be communicative and that, in context, would reasonably be understood by the viewer to be communicative." *Clark v. Cmty. for*

1

*Creative Non-Violence,* 468 U.S. 288, 294 (1984). I am not persuaded that there is a great likelihood that the food distribution here would be understood by viewers on UCLA's campus to be communicative. I agree with the district court that such conduct is not expressive and, therefore, undeserving of constitutional protection.

A

Krishna Lunch asserts that the viewer is likely to understand the distribution of prasada communicates a message about the harmfulness of meat consumption for humans, animals, and the environment. However, on a college campus, such as UCLA, food is distributed fairly often and for a variety of reasons generally without the intent to convey a message. Krishna Lunch notes that the "Assigned Area" where UCLA permitted them to distribute food four times per year is often used by other groups to distribute food. This fact, though, makes it more likely that viewers will simply regard Krishna Lunch's food distribution as non-communicative like that of other groups. For example, many organizations provide food for students in order to entice them to attend an event and not to communicate any message. Food can also be distributed as part of a fundraiser where the intent is simply to raise money. The fact that the Assigned Area and other areas of the campus are used for food distribution in these ways would make Krishna Lunch's conduct appear to students to be similar to other non-communicative distributions of food.

2

## B

The majority accepts Krishna Lunch's claim that the context would allow the viewer to understand the message. This "context," though, is speech itself. Specifically, Krishna Lunch argues that the accompanying singing, chanting, banners, signage, literature, and discussions make the food distribution itself expressive conduct. Yet, "[t]he fact that such explanatory speech is necessary is strong evidence that the conduct at issue here is not so inherently expressive that it warrants protection." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,* 547 U.S. 47, 66 (2006), ("*FAIR*").

Without the explanation provided by actual speech, viewers are not likely to understand Krishna Lunch's conduct to be communicative. As in *FAIR*, here, the only way viewers might understand the distribution of the food to communicate a message is by hearing Krishna Lunch's articulated message. Even then, the viewer still may think that the food was a way to lure him or her to the table to hear Krishna Lunch's message, or simply a friendly offering that accompanied the group's message, and may not view the food distribution *itself* as communicative. Thus, Krishna Lunch's conduct fails the second part of the *Spence* test.

## C

The majority concludes, without citing any authority, that the "context" here is not simply the accompanying pure speech but also the identity of the

3

organization. I fear that the implications of such holding would greatly expand the dimensions of protected free speech. In essence, then, the conduct of any organization whose identity stands for some idea or purpose could be considered expressive under the First Amendment.

For example, if a Christian religious organization handed out fried fish on UCLA's campus, such distribution would not be communicating the truths of the Gospel simply because the organization itself stands for such message. Although fish might be symbolic in certain contexts, viewers likely would not understand such conduct as communicative simply because the identity of the organization is associated with a certain mission.

Neither the Supreme Court nor this Court has ever adopted such a broad view of the First Amendment. I decline to accept such an expansion here. I would affirm the district court's dismissal of Krishna Lunch's free speech claim.

## II

In order to survive a motion to dismiss the free association claim, Krishna Lunch must demonstrate, as an initial matter, some underlying First Amendment conduct. *Roberts v. U.S. Jaycees,* 468 U.S. 609, 622 (1984). The right to free association is a derivative right that assures First Amendment rights can be exercised. *Id.* at 618. In other words, expressive association is "the right to

4

associate with others in *activities otherwise protected by the First Amendment*." *Dible v. City of Chandler,* 515 F.3d 918, 929 (9th Cir. 2008) (emphasis added).

Since I conclude that Krishna Lunch's distribution of prasada is not expressive conduct warranting First Amendment protection (and I agree with the majority that UCLA's neutral policy of general applicability does not violate Krishna Lunch's right to free exercise of religion), it follows that Krishna Lunch has failed to state a free association claim because there is no underlying First Amendment activity. Therefore, I would affirm the district court's dismissal of Krishna Lunch's free association claim as well.