**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 12, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

YUSSUF AWADIR ABDI,

     Plaintiff - Appellant,

v.

No. 18-4078

CHRISTOPHER A. WRAY, Director of
the Federal Bureau of Investigation, in his
official capacity; CHRISTOPHER M.
PIEHOTA, Director of the Terrorism
Screening Center, in his official capacity;
HUBAN A. GOWADIA, Acting
Administrator, Transportation Security
Administration (TSA), United States
Department of Homeland Security (DHS),
in his official capacity; KEVIN K.
MCALEENAN, Acting Commissioner
United States Customs and Border
Protection; NICHOLAS J. RASMUSSEN,
Director of the Terrorism Screening
Center, in his official capacity,

     Defendants - Appellees.
_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:17-CV-00622-DB)**
_____

Gadeir Abbas, CAIR Legal Defense Fund, Washington, D.C. (Lena F. Masri, CAIR
Legal Defense Fund, Washington, D.C., James W. McConkie and Bradley H. Parker,
Parker & McConkie, Salt Lake City, Utah, on the brief), for Plaintiff-Appellant.

Joshua Waldman, (Joseph H. Hunt, Assistant Attorney General, John W. Huber, U.S. Attorney, Sharon Swingle, with him on the brief), U.S. Department of Justice, Washington, D.C., for Defendants-Appellees.

———————————————————

Before **TYMKOVICH**, Chief Judge, **EBEL** and **PHILLIPS**, Circuit Judges.

———————————————————

**EBEL**, Circuit Judge.

———————————————————

Yusuf Awadir Abdi sued the directors of several federal agencies challenging his placement on the "Selectee List," a subset of the federal government's terrorist watchlist, which he alleges subjects him to enhanced screening at the airport and requires the government to label him as a "known or suspected terrorist" and to disseminate that information to government and private entities. Abdi's complaint asserts that, as a result of these alleged consequences, his placement on the Selectee List violates his Fifth Amendment rights to substantive and procedural due process and consequently the Administrative Procedure Act, 5 U.S.C. §§ 702, 706. Abdi seeks declarative and injunctive relief. The district court dismissed Abdi's complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, we AFFIRM.

## I.  BACKGROUND

### A. Factual Background

The relevant facts, as set out in Abdi's First Amended Complaint, are as follows. Abdi is a United States citizen and resident of Salt Lake City, Utah. Since 2014, Abdi has experienced several delays and extended security screenings at

airports, which has led him to believe that he is on the federal government's "Selectee List," a subset of the government's Terrorist Screening Database ("TSDB"). The TSDB is a master repository for suspected international and domestic terrorist records. The Terrorist Screening Center ("TSC"), which is administered by the FBI, develops and maintains the TSDB. The TSDB has two primary components: the Selectee List and the No Fly List. Persons on the No Fly List are prevented from boarding flights that intend to fly into, out of, or even through United States airspace. By contrast, persons on the Selectee List are not barred from flying but are systematically subject to extra screening at airports and land border crossings. Abdi challenges his placement on the Selectee List.

Abdi alleges that, since 2014, he has been subject to extended security screenings each time he travels by air due to his placement on the Selectee List. For example, he is unable to check in for flights online or at the self-service kiosks at the airport. Instead, he is directed to check in personally with an airline representative who is required to obtain clearance from the Department of Homeland Security before he or she can give Abdi his boarding pass. Abdi alleges that it takes about a half hour to obtain his boarding pass. Once he does, the boarding pass is stamped with an "SSSS" designation, which indicates that he is a "known or suspected terrorist." Compl. ¶ 30. Then, at the airport security checkpoint, Abdi is routinely subjected to secondary inspections, questioning, and prolonged searches of his person and luggage. Sometimes, TSA agents shut down an entire screening line and require

3

Abdi to proceed through the line by himself. Finally, at the gate, Abdi is publicly searched again by TSA agents before he is allowed to board his plane.

In addition to regularly experiencing these extra security screenings as a result of his placement on the Selectee List, Abdi alleges that, on one occasion, he was prevented from flying for several days because he was "upgraded" to the No Fly List. Compl. ¶ 40. On June 14, 2017, Abdi appeared at an international airport in Nairobi, Kenya, with his family, prepared to board a commercial flight back to the United States. Abdi was told by the ticketing agent that the United States would not allow him to board his flight, although his wife and children were permitted to fly home. Two days later, on June 16, 2017, Abdi was allowed to fly back to the United States. However, upon arriving at the Los Angeles International Airport's port of entry, Abdi was subjected to another lengthy screening that caused him to miss his connecting flight to Salt Lake City. Abdi successfully flew home to Salt Lake City two days later, on June 18.

Since June 2017, Abdi has flown three times—twice domestically and once internationally. Each time, Abdi was permitted to fly, but he was subjected to the enhanced screening measures described above. He has not missed any more flights due to the length of his security screenings.

Finally, Abdi alleges that, in addition to subjecting him to extra security screenings, the defendant government officials have disseminated his status as a "known or suspected terrorist" to state and local authorities, foreign governments,

4

corporations, private contractors, airlines, gun sellers, car dealerships, financial institutions, among other official and private entities and individuals. Compl. ⁋ 57.

## B. Procedural History

Abdi filed this lawsuit under the APA against the directors of the FBI, TSC, TSA, U.S. Customs and Border Protection, and National Counterterrorism Center ("NCTC"), alleging that, by placing Abdi and other similarly situated American citizens on the Selectee List, defendants violated his Fifth Amendment substantive and procedural due process rights. Abdi requested a declaratory judgment that defendants' "policies, practices, and customs violate the Fifth Amendment" and an injunction requiring defendants to remove him "from any watch list or database that burdens or prevents him from flying or entering the United States" and to notify all individuals in the TSDB of "the reasons and bases for their placement" on the government's various watchlists and provide them with an opportunity to contest their continued inclusion. Id. at 37–38. To support his substantive due process claim, Abdi alleged that the defendants' decision to place him on the Selectee List unduly burdens his fundamental right of "movement" without a compelling justification. The district court dismissed that claim by declining to recognize his asserted right of "movement" as a fundamental right. To support his procedural due process claim, Abdi alleged that the defendants' refusal to provide him with any notice that he was placed on the Selectee List—placement that deprived him of his liberty interests in travel and reputation—violates the procedural due process clause.

5

The district court dismissed that claim for failing plausibly to allege the deprivation of a constitutionally protected liberty interest.

We affirm the district court but on somewhat different grounds. We affirm the district court's dismissal of Abdi's substantive due process claim because, although Abdi's rights to travel interstate and internationally are both potentially implicated by his placement on the Selectee List, the government conduct alleged in the complaint has not substantially interfered with either right. Similarly, the district court's dismissal of Abdi's procedural due process claims was appropriate because Abdi has not been deprived of either his liberty interest in travel or his reputation.

## II. STANDARD OF REVIEW

We review de novo the district court's dismissal of Abdi's claims under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." United States ex rel. Reed v. KeyPoint Gov't Solutions, 923 F.3d 729, 764 (10th Cir. 2019) (citations, internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Importantly, although "a complaint need not provide 'detailed factual allegations,' it must give just enough factual detail to provide 'fair notice of what the . . . claim is and the grounds upon which it rests.'" Warnick v. Cooley, 895 F.3d 746, 751 (10th Cir. 2018) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In deciding

6

whether the plaintiff has adequately stated a claim for relief, we view "the totality of the circumstances as alleged in the complaint in the light most favorable to [the plaintiff]," Jones v. Hunt, 410 F.3d 1221, 1229 (10th Cir. 2005), accepting the plaintiff's well-pled facts as true and drawing all reasonable inferences in the non-moving party's favor, Sylvia v. Wisler, 875 F.3d 1307, 1313 (10th Cir. 2017).

## III.  DISCUSSION

**A. The complaint does not challenge Abdi's placement on the No Fly List**

Abdi first argues that the district court erred by "ignoring" his "No Fly List claims," Aplt. Br. at 10.  Essentially, Abdi asserts that he adequately alleged a claim challenging his placement on the No Fly List and that, even though his name has since been removed from the No Fly List, that claim cannot be dismissed as moot pursuant to the voluntary cessation doctrine because the government is free to place him on the No Fly List again at any time.  We do not reach the question of mootness because the complaint failed to allege enough facts to place the defendants on notice that Abdi was challenging his placement on the No Fly List.  Therefore, he waived that argument, and the district court did not err in dismissing the complaint by ignoring any supposed No Fly List claims.

The allegations in the complaint related to defendants' wrongdoing can be categorized into two groups.  First, the complaint includes allegations recounting the inconveniences that Abdi has experienced due to his placement on the Selectee List. See, e.g., Compl. ¶ 3 ("defendants' rationale for placing Plaintiff Abdi on the Selectee List is arbitrary"), ¶ 4 ("The consequences of being on the Selectee List . . .

7

include the burden of having to go through security with ticketing agents"), ¶ 27 ("Imam Abdi knows that he was on the Selectee List"), ¶ 49 ("Because the defendants placed him on the Selectee List, [Abdi] could not print his boarding pass at a kiosk"), ¶ 57 ("because Imam Abdi is included on the federal terror watch list, and specifically the Selectee List, Defendants disseminated . . . his designation"), ¶ 157 ("Defendants' actions in nominating Plaintiff and other similarly situated American citizens to the Selectee List blatantly violate [49 U.S.C. § 114(h)(3)]").

Second, the complaint includes allegations recounting the inconveniences that all people in the TSDB experience, regardless of whether their name appears on the No Fly List or the Selectee List. See, e.g., Compl. ¶¶ 61–65 (alleging that defendants disseminate the names of everyone in the TSDB to government agencies and foreign governments), ¶ 68 ("Banks have closed the bank accounts of individuals listed on the federal terror watch list"), ¶ 78 ("Being on the federal terror watch list can prevent listed persons . . . from purchasing a gun."), ¶ 80 (TSDB listees can be prevented "from obtaining or renewing their Hazmat license"), ¶ 81 (TSDB listees can be prevented "from working at an airport, or working for an airline"). These alleged inconveniences apply to both people on the No Fly List and people on the Selectee List, and Abdi did not allege that he or anyone similarly situated experienced any of these enumerated inconveniences because of their placement on the No Fly List in particular. Furthermore, Abdi did not allege that he in fact experienced any of these inconveniences. Instead, Abdi alleges only that he

8

personally has experienced various specific travel impediments because of his inclusion on the Selectee List.

The complaint does allege that Abdi was placed on the No Fly List for a short time. In the facts section, the complaint states that Abdi was prevented from boarding a plane from Nairobi to the United States on one occasion on June 14, 2017, because he was "upgraded from the Selectee List to the No Fly List." Id. at ¶ 40. However, the complaint then states that, two days later, Abdi was allowed to fly back to the United States and has since been allowed to fly. Id. at ¶ 43–47. Several dozen paragraphs later, the complaint alleges that defendants' "have unduly deprived Plaintiff of constitutionally protected rights" by "including Plaintiff and other similarly situated American citizens on a watch list that unreasonably burdens or prevents them from boarding commercial flights." Id. at ¶ 156 (substantive due process claim). At most, these allegations place the defendants on notice that Abdi was challenging his temporary, forty-eight-hour placement on the No Fly List as having violated his constitutional rights. The district court acknowledged that Abdi was prevented from flying for forty-eight hours, Dist. Ct. Op. at 3 n.1, as do we in our analysis below. However, Abdi's complaint does not allege that he was prohibited from flying indefinitely due to his placement on the No Fly List or that he believed he would be prohibited from flying in the future under a voluntary cessation theory. Therefore, we reject Abdi's contention that the district court overlooked any such claims, and we construe Abdi's claims for relief to relate solely to his placement on the Selectee List.

9

**B. Abdi's complaint failed to allege a plausible substantive due process claim**

Abdi argues that the district court erred in dismissing his substantive due process claim predicated upon his placement on the Selectee List. Applying the fundamental-rights analysis from Washington v. Glucksberg, 521 U.S. 702, 721–722 (1997), we affirm the district court's dismissal of that claim because, although Abdi's fundamental right to interstate travel and his right to international travel, whether fundamental or not, could potentially be implicated by placement on the Selectee List, the government conduct alleged in Abdi's complaint has not violated those rights. To reach that conclusion, we (1) identify the applicable law, (2) define the fundamental rights at issue, to the extent we need to do so, and (3) conclude that those rights have not been infringed by the conduct alleged in the complaint.

**1. Applicable substantive due process analysis**

"Substantive due process bars 'certain government actions regardless of the fairness of the procedures used to implement them.'" Brown v. Montoya, 662 F.3d 1152, 1172 (10th Cir. 2011) (quotation omitted). It limits what the government may do in both its legislative and executive capacities. The Supreme Court has found substantive due process violations where government action has infringed a "fundamental" right without a "compelling" government purpose, Glucksberg, 521 U.S. at 721–722, as well as where government action deprives a person of life, liberty, or property in a manner so arbitrary it "shocks the conscience," Cty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). This court held in Halley v. Huckaby that "we apply the fundamental-rights approach when the plaintiff

10

challenges legislative action, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious executive action," 902 F.3d 1136, 1153 (10th Cir. 2018).  Both Abdi and the government frame their substantive due process arguments in fundamental-rights terms, even though Abdi's alleged harm stems from executive agency action rather than an Act of Congress.  For the following reasons, we agree that the Glucksberg analysis governs the unique circumstances presented in this case.

Abdi filed this lawsuit against the directors of the FBI, TSC, TSA, U.S. Customs and Border Protection, and NCTC, alleging that, "[b]y placing Plaintiff and other similarly situated American citizens on the federal terror watch list, Defendants have placed an undue burden on their fundamental right of movement," Compl. ¶ 158, and seeking, in part, "[a] declaratory judgment that Defendants' policies, practices, and customs violate the Fifth Amendment to the United States Constitution," id. at 37.  Accordingly, Abdi does not challenge the tortious conduct of an individual agency officer, like the TSA agents that screen him, nor does he challenge legislative action, because the TSC, which develops and maintains the TSDB, was not created by Congress.  It was established by the Attorney General at the direction of the President through the issuance of Homeland Security Presidential Directive-6 ("HSPD-6") on September 16, 2003, and it functions through the concerted efforts of several agency heads.  See Staff of H. Comm. on Homeland Sec., 110th Cong., Compilation of Homeland Security Presidential Directives (HSPD) (Updated Through December 31, 2007) at 31 (Comm. Print 2008).

In HSPD-6, the President mandated that the Attorney General "establish an organization to consolidate the Government's approach to terrorism screening and provide for the appropriate and lawful use of Terrorist Information in screening processes" and "implement appropriate procedures and safeguards with respect to all such information about United States persons" in "coordination with the Secretary of State, the Secretary of Homeland Security, and the Director of Central Intelligence," all in an effort to "[t]o protect against terrorism." Id. Thus, Abdi's complaint, which challenges his placement on the Selectee List, does not object to an independent, "specific act of a governmental officer," Lewis, 523 U.S. at 846–49, which the Supreme Court has held should be analyzed under the shocks-the-conscience test, but to the concerted action of several agency employees, undertaken pursuant to broad governmental policies, that resulted in his name being included in the TSDB. This challenge is akin to a challenge to legislative action because, as with an act of a lawmaking body, the federal government here is attempting, through policy, to achieve a stated government purpose: to "protect against terrorism." Thus, it is most appropriate to analyze under the Glucksberg framework whether the defendants' implementation of the policies that govern their actions violates Abdi's fundamental rights, and, if so, whether the policies are narrowly tailored to achieve a compelling government purpose.[1]

---

[1] At least one other panel of this court has applied the fundamental-rights approach in a case where, as here, a government entity's implementation of its official policy is alleged to have caused a substantive due process violation. Dawson v. Bd. of Cty. Comm'rs, 732 F. App'x 624, 630 (10th Cir. 2018) (unpublished) (applying fundamental-

Substantive due-process analysis under Glucksberg proceeds in three steps. First, the reviewing court must determine whether a fundamental right is at stake either because the Supreme Court or the Tenth Circuit has already determined that it exists or because the right claimed to have been infringed by the government is one that is objectively among those "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty" such that it is "fundamental." Glucksberg, 521 U.S. at 720–21. Second, the court must determine whether the claimed right—fundamental or not—has been infringed through either total prohibition or "direct[] and substantial[]" interference. Zablocki v. Redhail, 434 U.S. 374, 387 (1978). Third, if the right infringed is a fundamental right, the court must determine whether the government has met its burden to show that the law or government action interfering with the right is narrowly tailored to achieve a compelling government purpose. Id. at 388. If the right is not fundamental, we apply rational basis review. Reno v. Flores, 507 U.S. 292, 305 (1993) ("[N]arrow tailoring is required only when fundamental rights are involved."). We agree with Abdi that both his fundamental right to interstate travel and his right to travel abroad, whether fundamental or not, are at stake here (although we reject the novel "right of movement" that Abdi asserts), but the government action he alleged in the complaint has not substantially interfered with either right. Thus, we need not and do not analyze whether the government's conduct passes the applicable level of scrutiny.

---

rights approach to assess the due process implications of a county jail's pretrial detention policies), cert. denied, Dawson v. Bd. of Cty. Comm'rs, 139 S. Ct. 862 (2019).

13

## 2. Scope of the rights to travel interstate and internationally

Abdi asserts that we are required by Glucksberg to examine this country's historical foundational documents and international treaties anew to formulate the interest at stake in this case and that, if we did, we would discover, rooted in our historical traditions, a "basic and far-reaching," Aplt. Br. at 16., right of movement that permits "movement between the states, as well as between this country and others," Aplt. Br. at 13. However, the Supreme Court has already recognized the fundamental right to travel "throughout the United States," Dunn v. Blumstein, 405 U.S. 330, 338 (1972), and has recognized a different right to travel "outside the United States," Haig v. Agee, 453 U.S. 280, 306 (1981) ("[T]he freedom to travel outside the United States must be distinguished from the right to travel within the United States."). Through several cases, the Court has defined the scope of these rights. We are bound by the definitions established by those precedents, and, as a result, we cannot and do not create a new, more expansive right to "movement" as Abdi suggests. The Supreme Court has cautioned many times against creating new substantive due process rights. See Glucksberg, 521 U.S. at 720 ("[G]uideposts for responsible decision[-]making in this unchartered area are scarce and open-ended."); see also Moore v. City of E. Cleveland, 431 U.S. 494, 544 (1977) (White, J., dissenting) ("That the Court has ample precedent for the creation of new constitutional rights should not lead it to repeat the process at will."). Therefore, we rely on Supreme Court precedent to articulate the rights to travel interstate and internationally that are at stake.

14

As for the right to travel interstate, the Supreme Court has held that the "[f]reedom to travel throughout the United States has long been recognized as a basic right under the Constitution," Dunn, 405 U.S. at 338 (internal quotation omitted). The right protects, among other things, "the right of a citizen of one State to enter and to leave another State." Saenz v. Roe, 526 U.S. 489, 500 (1999). Although the textual source of the right has been the subject of some debate, the Supreme Court has recognized that this right of "free ingress and regress to and from" neighboring States was expressly mentioned in the Articles of Confederation and "may simply have been 'conceived from the beginning to be a necessary concomitant of the strong Union the Constitution created.'" Id. at 501 (citation omitted).

The Supreme Court has distinguished between the right to travel interstate and the right to travel internationally. Whereas the "right of interstate travel is virtually unqualified," the Court has stated that the right to travel abroad is an "aspect of the 'liberty' protected by the Due Process Clause." Califano v. Torres, 435 U.S. 1, 4 n.6 (1978). But the Supreme Court has also recognized that "[t]ravel abroad, like travel within the country, may be necessary for a livelihood . . . [and] may be as close to the heart of the individual as the choice of what he eats, or wears, or reads." Kent v. Dulles, 357 U.S. 116, 126 (1958). Because we conclude that Abdi's placement on the Selectee List does not infringe his interstate or international travel rights, we do not need to determine here the scope of an individual's right to international travel or the applicable standard of review.

15

The Supreme Court has made clear that the rights to interstate and international travel are not unlimited. Although citizens have a right to travel throughout the United States "uninhibited by statutes, rules, or regulations which unreasonably burden or restrict movement," Saenz, 526 U.S. at 499 (emphasis added), reasonable restrictions on the right to interstate travel are permissible. For example, when a "person has been convicted of a crime within a State[,] [h]e may be detained within that State, and returned to it if he is found in another State." Jones v. Helms, 452 U.S 412, 419 (1981). Other circuits have found impositions like gasoline taxes and toll roads to be acceptable burdens on the right to travel interstate. Kansas v. United States, 16 F.3d 436, 442 (D.C. Cir. 1994). The Second Circuit has held that airport security that delays a traveler who checks a gun for "a little over one day" is "a minor restriction that d[oes] not result in a denial of the right to travel." Torraco v. Port Auth. of New York & New Jersey, 615 F.3d 129, 141 (2d Cir. 2010). The Ninth Circuit has also held that "burdens on a single mode of transportation do not implicate the right to interstate travel." Miller v. Reed, 176 F.3d 1202, 1205 (9th Cir. 1999). In sum, government conduct that does not directly and substantially "impair the exercise of the right to free interstate movement" does not amount to a constitutional violation. Saenz, 526 U.S. at 501.

Like the freedom to travel interstate, the freedom to travel abroad is "subject to reasonable government regulation." Haig v. Agee, 453 U.S. 280, 306 (1981); see also Kashem v. Barr, —F.3d—, 2019 WL 5303288, at *14 (9th Cir. Oct. 21, 2019). For example, in Haig, the Court held that the President could revoke the passport of a

16

United States citizen if the passport-holder was engaging in activities abroad that were likely to cause serious damage to the national security or the foreign policy of the United States, such as divulging CIA secrets. Haig, 453 U.S. at 282.

Only a few federal courts have considered whether placement on the Selectee List infringes a citizen's rights to travel interstate or internationally. In Beydoun v. Sessions, 871 F.3d 459, 467 (6th Cir. 2017), the Sixth Circuit held that the plaintiff's placement on the Selectee List did not substantially interfere with his exercise of the right to travel interstate or internationally because the burdens that resulted from the placement were "negligible or incidental." There, one plaintiff alleged that he had missed "countless flights" after being subjected to lengthy secondary security screenings and the delays deterred him from flying altogether. Id. A second plaintiff alleged that he had suffered delays of ten minutes and one hour and been deterred from flying once. Id. The Sixth Circuit held that "[w]hile Plaintiffs may have been inconvenienced by the extra security hurdles they endured in order to board an airplane, these burdens do not amount to a constitutional violation." Id. at 468. The Sixth Circuit also found that it was important that the plaintiffs had not been prevented from "flying altogether or from traveling by means other than an airplane" which distinguished its case from "those in which plaintiffs claimed they could not fly at all because they were on the No Fly List." Id. In Mohamed v. Holder, a federal district court held that the plaintiff's allegation that he was prevented from boarding a plane from Kuwait to the United States due to his placement on the No Fly List failed to state a claim that his constitutional right of reentry was violated

17

because he was allowed to board a flight four days later. 995 F. Supp. 2d 520, 537 (E.D. Va. 2014). The district court held that "the four to five-day delay that Mohamed experienced . . . did not constitute a constitutional deprivation." Id. Thus, United States citizens have a fundamental right to travel interstate and a right to travel abroad, but neither is unlimited.

Having sufficiently defined the scope of the rights that are at stake, the final question before us is whether Abdi's placement on the Selectee List substantially interfered with those rights. Zablocki, 434 U.S. at 388.

**3. Abdi's placement on the Selectee List has not infringed his travel rights**

Here, Abdi asserts that his status as a listee "deprives his liberty interest in travel—not because it absolutely prevents his ability to travel—but because it enacts a substantial cost anytime he does choose to exercise that right." Aplt. Br. at 23. However, as the district court found, the burdens and delays alleged by Abdi do not substantially interfere with his travel rights. First, Abdi's placement on the Selectee List affects only one mode of transportation throughout the country. It places no restrictions on Abdi's ability to drive, bus, or otherwise commute interstate. Second, when the government prevented Abdi from boarding his plane on June 14, 2017, he was delayed for just two days before he was permitted to fly back to the United States. That delay is commensurate with the four-day delay in Mohamed and the one-day delay in Torraco, both of which were upheld. Third, the excessive security Abdi experiences is not unlike that of many air travelers. Abdi has missed one flight due to the length of his security screenings, but the Sixth Circuit upheld the use of

18

security screenings that caused the plaintiff in <u>Beydoun</u> to miss "countless flights." 871 F.3d at 467. Additionally, Abdi alleges that obtaining his boarding pass takes about a half hour, but he does not indicate how long his screenings take in total. Average air travelers often spend more than one hour in TSA lines and sometimes miss flights as a result of those delays. Delays of a few hours are not uncommon for many air travelers and do not amount to a substantial interference with the rights to travel interstate or internationally. Abdi has not alleged that his delays substantially exceed those experienced by many air travelers nor preclude his ability to travel.

Therefore, we conclude that neither Abdi's allegation that the government prevented him from boarding his plane in Nairobi nor his allegation that his placement on the Selectee List subjects him to extra airport security states a substantive due process claim, because those impediments do not substantially interfere with his ability to travel. We affirm the district court's dismissal of Abdi's substantive due process claim.

## C. Abdi's complaint failed to allege a plausible procedural due process claim

Abdi also argues that the district court erred by dismissing his procedural due process claim. The Fifth Amendment's Due Process Clause forbids the federal government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The requirements of procedural due process apply only to the deprivations of interests encompassed by the [constitutional] protection of liberty and property." <u>Al-Turki v. Tomsic</u>, 926 F.3d 610, 614 (10th Cir. 2019). Therefore, to state a procedural due process claim, a plaintiff must establish (1) the

19

deprivation of (2) a constitutionally cognizable liberty or property interest, (3) without adequate due process procedures. Abdi asserts that he was deprived of two liberty interests without due process. First, Abdi contends that defendants prevented him from traveling free from unreasonable burdens when they placed him on the Selectee List. Second, Abdi asserts under the stigma-plus doctrine that defendants deprived him of his liberty interest in his reputation when they labeled him a "known or suspected terrorist" on the Selectee List and when they disseminated that list to public and private entities. Abdi argues that both deprivations occurred in the absence of any process, because the defendants did not notify him of either occurrence.[2] The allegations in the complaint are insufficient to plausibly state a procedural due process claim under either theory.

### 1. Government has not deprived Abdi of his liberty interest in travel

Assuming the rights to travel interstate and internationally are cognizable liberty interests for purposes of procedural due process, Abdi was not deprived of those rights in this case. As explained above, the government may impose reasonable restrictions on both a citizen's right to travel throughout the United States and a citizen's right to travel internationally. Neither the extra security measures that Abdi endured due to

---

[2] Abdi stated at oral argument before the district court that he is not challenging the Department of Homeland Security Traveler Redress Inquiry Program ("DHS TRIP"), a process that allows individuals who seek redress after having been included in the terrorist watch list to submit an inquiry about their listee status to DHS. Dist. Ct. Op. at 4. Abdi insisted instead that he challenges his placement on the watchlist in the first instance. Id. His brief to us emphasizes that it is only the government's failure to notify him of his placement on the list that violates procedural due process.

his placement on the Selectee List nor the forty-eight-hour delay he experienced

trying to fly home from Nairobi deprived him of a constitutional right; those

impediments merely reasonably encumbered his ability to travel interstate and

internationally and by only one mode of transportation. We agree with the district

court that the government's conduct did not deprive Abdi of a liberty interest in

travel.[3]

### 2. Government has not deprived Abdi of his liberty interest in reputation

Abdi also alleges that the government defendants deprived him of his liberty

interest in his reputation without due process. "Where a person's good name,

reputation, honor, or integrity is at stake because of what the government is doing to

him, a protectable liberty interest may be implicated . . . ." Martin Marietta

Materials, Inc. v. Kansas Dep't of Transp., 810 F.3d 1161, 1184 (10th Cir. 2016)

(internal quotation marks and citation omitted). For a plaintiff to prevail on a

reputation-based procedural due process claim, the plaintiff must satisfy the "stigma-

plus" standard by demonstrating both "(1) governmental defamation and (2) an

---

[3] A district court recently concluded that inclusion in the TSDB (but not as a listee on the No Fly list) substantially interfered with the plaintiff's rights to travel, resulting in the deprivation of a liberty interest. See Elhady v. Kable, 391 F.Supp. 3d 562, 571, 577-79 (E.D. Va. 2019). In Elhady, the plaintiffs produced evidence of more significant travel obstacles than are at issue here—for example, being detained at gunpoint at a border check, handcuffed in public view, and interrogated for seven to ten hours, on three separate occasions, see id. at 571-72—that actually deterred the plaintiffs from traveling at all, internationally or domestically, see id. at 577-79. Without expressing any views on the claims at issue in Elhady, we note that those circumstances are distinguishable from the case we consider here.

21

alteration in legal status." Id. (citation omitted). Even if Abdi's complaint adequately pled governmental defamation, a conclusion we need not and do not reach, the complaint failed to allege facts that demonstrate the second element of the stigma-plus test, that he suffered a change in his legal status.

The "plus factor" of the stigma-plus standard requires a plaintiff to allege that he or she suffered the loss of a right or interest that has attained "constitutional status by virtue of the fact that [it was] initially recognized and protected by state law . . . [and] the State seeks to remove or significantly alter that protected status." Paul v. Davis, 424 U.S. 693, 710–11 (1976). For example, in Wisconsin v. Constantineau, 400 U.S. 433, 434 (1971), a Wisconsin statute allowed local police to forbid the sale of liquor to any person that drinks alcohol excessively and as a result "misspend[s], waste[s] or lessen[s] his estate" or disturbs the peace. Id. at 445. The chief of police of Hartford, Wisconsin, without notice or hearing to Norma Grace Constantineau, posted a notice in all retail liquor outlets that sales or gifts of liquor to Constantineau were forbidden for one year. The Supreme Court held that the statute violated Constantineau's procedural due process rights because—as the Court later explained in Paul v. Davis, 424 U.S. 693, 708–09 (1976)—she was given no process by which to challenge the accusations that both damaged her reputation and prevented her from engaging in an activity that is otherwise allowed under state law, namely, purchasing alcohol. Similarly, in Davis, 424 U.S. at 695, a local police chief distributed a list of "active shoplifters" that included Edward Charles Davis's name and photo to local merchants without giving Davis notice or an opportunity to contest the accusations. However, unlike the flyer in Constantineau

22

that prohibited merchants from selling liquor to Norma Grace, the flyer in <u>Davis</u> merely defamed Davis, without mandating that any merchant refuse him service. <u>Id.</u> at 707–09. The Supreme Court held that the state's "defamatory publications, however seriously they may have harmed [Davis's] reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause" because the defamation did not "alter[] or extinguish[]" a "right or status previously recognized by state law." <u>Id.</u> at 711-12.

Here, Abdi's Complaint asserts that the government violated his procedural due process rights when it placed him on the Selectee list without notice, which imposed on him the stigmatizing label of "known or suspected terrorist" and then "disseminated the stigmatizing label . . . to state and local authorities, foreign governments, private corporations, private contractors, airlines, gun sellers, car dealerships, financial institutions, the captains of sea-faring vessels, among other official and private entities and individuals." Compl. ¶¶ 152–53. The complaint alleges that, as a result of the wide dissemination of that stigmatizing label, Abdi could, potentially, be prohibited from:

1. Accessing the financial system,
2. Opening or maintaining bank accounts,
3. Making wire transfers,
4. Sponsoring the permanent residency of immediate relatives,
5. Entering other nations,
6. Purchasing a gun,
7. Obtaining a commercial drivers' license to transport hazardous material,
8. Obtaining or renewing a Hazmat license,
9. Working for an airport or an airline, or
10. Obtaining an FAA license.

23

Id. at ¶¶ 67–83. Abdi also alleges that his family's visas were processed differently because of his placement on the Selectee List. Id. at ¶ 36.

The allegations in support of Abdi's stigma-plus argument suffer from two infirmities. First, Abdi failed to specifically allege that he has actually been prevented from participating in any of the above activities. His allegations are entirely speculative. For example, he alleges that placement on the terrorist watchlist "can prevent listed persons . . . from purchasing a gun," id. at ¶ 78 (emphasis added), "can prevent listed persons . . . from obtaining or renewing their Hazmat license," id. at ¶ 80 (emphasis added), and "can also prevent listed persons . . . from working at an airport," id. at ¶ 81 (emphasis added). Abdi's brief to us likewise argues, in the future tense, that local police "may" pull him over without reasonable suspicion due to his listee status and that, if he attempted to buy a gun in certain states, he "would be" unable to do so. Aplt. Br. at 25. Furthermore, Abdi's family's alleged experience with the United States visa system is not his own.

Second, Abdi failed to allege that, in addition to distributing the list of "known of suspected" terrorists on which his name appears, the government mandates that the private and public entities in receipt of the list refuse to offer service or employment to the listed individuals, as in Constantineau. Abdi alleges that the government disseminates the watchlist "with the purpose and hope" that the entities and individuals

24

that receive it "will impose consequences on those individuals." Compl. ¶ 66. But a "purpose and hope" is not a mandate.[4]

For these reasons, Abdi has failed to allege that he was actually deprived of any right conferred by state or federal law because of his status on the Selectee List. Accordingly, we affirm the district court's dismissal of Abdi's procedural due process claim.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's dismissal of Abdi's complaint with prejudice.

---

[4] The district court in Elhady held that being on the TSDB deprived the plaintiffs of their reputational interest but, in reaching that conclusion, did not address Constantineau's requirement that the challenged government conduct must mandate others' action against the plaintiffs. See 391 F.Supp. 3d at 579-80.