# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2023

Lyle W. Cayce
Clerk

No. 19-20706

Anthonia I. Nwaorie, *on behalf of herself and all others similarly situated*,

> *Plaintiff—Appellant*,

*versus*

United States of America; U.S. Customs and Border Protection; Kevin K. McAleenan,

> *Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-1406

Before Richman, *Chief Judge*, and Dennis and Haynes, *Circuit Judges*.

Per Curiam:*

On October 31, 2017, Customs and Border Protection (CBP) officers seized over $40,000 from Anthonia Nwaorie's carry-on luggage before she boarded an international flight from Houston to Nigeria. The officers seized Nwaorie's cash pursuant to 31 U.S.C. § 5317, which permits the seizure and

---

* This opinion is not designated for publication. 5th Circuit Rule 47.5.4.

No. 19-20706

civil forfeiture of funds traceable to a failure to report the transportation of over $10,000 to or from the United States, based on Nwaorie's admitted failure to properly report the cash. The government later declined to pursue judicial civil forfeiture proceedings against the seized cash.

In this situation, the Civil Asset Forfeiture Reform Act (CAFRA), 18 U.S.C. § 983, requires the government to "promptly" return the seized property. But instead of immediately returning the currency, CBP sent Nwaorie a letter giving her one of two choices. First, she could sign and return a Hold Harmless Agreement (HHA), in which she waived any rights against the government and its agents because of the seizure of the property. According to the letter, if Nwaorie signed and returned the HHA within 30 days, her property would be returned. As a second choice, the letter stated that if she chose not to enter into the HHA, the Government would initiate administrative forfeiture proceedings. Nwaorie did not sign the HHA but instead filed the instant putative class action suit against the United States of America, CBP, and Kevin McAleenan in his official capacity as the Commissioner of CBP. After she filed her complaint, the Government returned currency of equal value to the cash that had been seized.

The district court dismissed Nwaorie's complaint for lack of subject matter jurisdiction and for failure to state a claim. On review, we find that Nwaorie lacks standing for the relief she seeks; her claim for interest is barred by sovereign immunity, and she has failed to state a claim that her procedural due process rights were violated by her being subjected to additional screening. We therefore AFFIRM the district court's dismissal of Nwaorie's claims.

## I.

On October 31, 2017, Nwaorie sought to board a flight from George Bush Intercontinental Airport in Houston to Nigeria. She was traveling with

$41,377 in U.S. currency in her carry-on luggage, which she contends she intended, in part, to use to start a medical clinic in Nigeria and, in part, to deliver to family.  As Nwaorie was about to board her flight, she was stopped and questioned by CBP officers about how much cash she was carrying.  Nwaorie claims that she understood the officers to be asking only about the cash on her person, so she responded that she had $4,000, the amount of cash in her purse.  She then filled out a currency declaration report stating that she was carrying $4,000.  CBP officers searched her carry-on luggage and found the additional cash in excess of $40,000 that Nwaorie was transporting.

Because Nwaorie failed to report that she was transporting over $10,000, the officers seized all of her cash pursuant to 31 U.S.C. § 5317.  This provision permits the seizure and civil forfeiture of funds traceable to a failure to report the transportation of over $10,000 to or from the United States.  31 U.S.C. § 5317; *see also id.* at § 5316.  Nwaorie then made a round trip to Nigeria. When Nwaorie returned to the United States, she was directed to a separate lane from other passengers, where she was purportedly subjected to more invasive screening.  CBP agents "ransacked" her luggage and slit open the bottom of her purse to search its lining.  She alleges that one agent told her that CBP was aware that her money had been previously seized and would now "follow her wherever she goes," subjecting her to invasive treatment every time she travels internationally.

Pursuant to CAFRA, on November 6, 2017, CBP sent Nwaorie a notice of the seizure of the $41,377.  *See* 18 U.S.C. § 983(a)(1)(a).  The notice stated that Nwaorie was permitted to, *inter alia*, request an administrative review of the seizure or request that the matter be referred to the United States Attorney's Office (USAO), which would decide whether to pursue a judicial forfeiture proceeding under CAFRA.

No. 19-20706

Nwaorie opted for a referral to the USAO and also filed a "CAFRA Seized Asset Claim Form" stating her interest in the seized cash and authorizing the government to file a complaint for its judicial forfeiture. *See id.* at § 983(a)(2) (explaining the requirements for the filing of a claim for property seized in a nonjudicial civil forfeiture proceeding). The filing of a proper claim requires CBP to either "return the [seized] property" or "suspend the administrative forfeiture proceeding and promptly transmit the claim . . . to the appropriate U.S. Attorney for commencement of judicial forfeiture proceedings." 28 C.F.R. § 8.10(e). If the Government does not bring a complaint for judicial forfeiture within ninety days of the filing of a claim, CAFRA states that "the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General and may not take any further action to effect the civil forfeiture of such property." 18 U.S.C. § 983(a)(3)(B)(ii)(II). CAFRA further requires CBP to "promptly notify the person with a right to immediate possession of the property, informing that person to contact the property custodian within a specified period for the release of the property." 28 C.F.R. § 8.13(b).

The USAO declined to bring a forfeiture action for Nwaorie's seized money, and, on April 4, 2018, CBP sent Nwaorie a letter informing her that she was required to sign and return an HHA within thirty days to obtain her cash. The letter stated that once the HHA was received, a refund check would be issued to Nwaorie within eight to ten weeks. However, the letter asserted that, if Nwaorie failed to return the signed HHA, CBP would initiate "administrative forfeiture proceedings." The enclosed HHA provided that, in exchange for the return of her cash, Nwaorie agreed to:

- release and forever discharge the United States, its employees, and agents from any lawsuits in connection with the seizure or release of the cash;

- hold harmless the United States, its employees, and agents from lawsuits "by any others" for claims arising from the seizure or release of the cash;

- reimburse the United States for any necessary expenses, attorney's fees, or costs incurred in the enforcement of the agreement within thirty days of receiving notice; and

- waive any claim to attorney's fees, interest or any other relief related to the seizure of her cash

Nwaorie did not sign the HHA.

In June 2018, Nwaorie was again allegedly singled out for invasive screenings by Transportation Security Administration (TSA) officials before boarding a domestic flight. She also alleges that when she flew to Nigeria in October 2018, "unknown government agents" "thoroughly" searched her belongings, resulting in a body wash spilling on the contents of her luggage, ruining much of it. She contends her name has been placed in a government database of persons to be subjected to additional screening measures before flying. Other than the comment from a CBP officer in December 2017 that the agency would follow her wherever she goes, however, Nwaorie was never notified of her inclusion in this database.

Nwaorie alleges that the only means of challenging her inclusion in the database is through the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP). The Department of Homeland Security (DHS) "created this program in response to Congress's statutory mandate to 'establish a timely and fair redress process for individuals who believe they have been delayed or prohibited from boarding a commercial aircraft because they were wrongly identified as a threat.'" *Shearson v. Holder*, 725 F.3d 588, 590–91 (6th Cir. 2013) (quoting 49 U.S.C. § 44926). Travelers can initiate the redress process by submitting an inquiry form through DHS TRIP, which will result in DHS reviewing the individual's information, "correct[ing] any

No. 19-20706

erroneous information, and provid[ing] the individual with a timely written response." 49 C.F.R. § 1560.205(d); *see also* Department of Homeland Security, *DHS Traveler Redress Inquiry Program (DHS TRIP)*, https://www.dhs.gov/dhs-trip. The inquiry form, however, does not permit a traveler to provide arguments or evidence challenging the basis for their inclusion in the database nor to examine the Government's evidence. Nwaorie has not utilized the DHS TRIP administrative process.

Nwaorie filed the instant lawsuit in May 2018, asserting both class and individual claims against the United States of America, CBP and Kevin McAleenan in his official capacity as the Commissioner of CBP. Nwarorie brought, against all defendants, two class claims for *ultra vires* violations of the Civil Asset Forfeiture Reform Act and for violations of the Fifth Amendment's due process clause, as well as two individual claims for return of her property and for violations of the Fifth Amendment. On the same day Nwaorie filed her complaint, she also moved to certify a class on behalf of herself and similarly situated persons. After Nwaorie filed her complaint and motion for class certification, the Government returned to her the amount of cash it had seized from her.

Based in part on this return, the Government moved to dismiss Nwaorie's claims for lack of subject matter jurisdiction and failure to state a claim. The motion was referred to a magistrate judge who recommended that it be granted. As to subject matter jurisdiction, the magistrate judge reasoned that sovereign immunity barred Nwaorie's claim against the government for interest, and since the Government had already returned the $41,337, her claims arising from the seizure and attempted forfeiture were moot. Specifically, the magistrate judge recommended that Nwaorie's individual claims for the return of her property and her contentions that the HHAs at issue violated CAFRA and imposed unconstitutional conditions on the return of seized property were moot. The magistrate judge determined, however, that

an exception to mootness for putative class claims applied to the latter two contentions, which rendered them nonetheless justiciable. But the magistrate judge recommended that Nwaorie be found not to have stated a claim on the merits. The district court adopted the report in full. This appeal followed.

While this appeal was pending, the Government informed this court that CBP has ceased employing HHAs in circumstances like those presented in this case. Additionally, a DHS Inspector General Report was issued that identified numerous deficiencies and inconsistencies in the manner CBP handled civil forfeitures under CAFRA. In response to the report, "DHS agreed to develop a department-wide directive to: 1) ensure compliant CAFRA implementation; 2) provide notices and forms that conform to Federal best practices; and 3) ensure consistent practices for managing responses to property owners, while taking into account the different forfeiture authorities of each component. The Government contends these developments further demonstrate that Nwaorie's claims are moot, and Nwaorie has not responded.

## II.

This court reviews *de novo* a district court's dismissal for lack of subject-matter jurisdiction. *Rothe Dev., Inc. v. U.S. Dep't of Def.*, 666 F.3d 336, 338 (5th Cir. 2011). "A federal court has no subject matter jurisdiction over claims against the United States unless the government waives its sovereign immunity and consents to suit." *Id.* (internal quotation marks and citation omitted). The *de novo* standard also applies to review of a district court's dismissal of a complaint for failure to state a claim. *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006). The court's analysis focuses "exclusively on what appears in the complaint and its proper attachments." *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). A plaintiff must plead "enough facts

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim meets this standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.

We first must consider whether Nwaorie's request for equitable relief under her individual and putative class claims arising from the seizure and attempts to force her to sign an HHA are justiciable. Because we find this inquiry dispositive, we do not address their merits. We then consider the merits of Nwaorie's procedural due-process challenge to CBP's targeting her for additional screenings without providing a meaningful opportunity to contest this procedure.[1]

### A. Justiciability of the Seizure and HHA Claims

Article III limits the power of federal courts to cases and controversies. U.S. Const. art. III, § 2. A plaintiff must have standing to sue, which, "for injunctive relief," requires a party to "(1) have suffered an injury-in-fact; (2) establish a causal connection between the injury-in-fact and a complained-against defendant's conduct; (3) show that it is likely, not merely speculative, that a favorable decision will redress the injury-in-fact; and (4) demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Funeral Consumers Alliance, Inc. v. Serv. Corp. Intern.*, 695 F.3d 330, 342 (5th Cir. 2012) (internal quotation marks and citation omitted). The threat of injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of*

---

[1] Nwaorie has expressly abandoned her equal protection challenge to the additional screening.

*Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).

Further, "standing is not dispensed in gross," and "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). Standing is assessed at the time a complaint is filed. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991). Nevertheless, "an actual controversy [must] be extant at all stages of review, not merely at the time the complaint is filed. If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (cleaned up). The doctrine of sovereign immunity can also act as a bar to a court's jurisdiction. *See Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 280 (5th Cir. 2002).

### 1. Nwaorie's Standing for the Equitable Relief She Seeks

In a putative class action, the named plaintiff must demonstrate that she individually has standing. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976). The Government argues that because Nwaorie opted not to sign the HHA, it could not result in any injury to her, and as such, she lacks standing for her class claims that the HHAs issued by CBP are *ultra vires* and impose unconstitutional conditions. We agree. Nwaorie lacks standing to pursue the equitable relief she seeks in the form of: (1) a declaration that any current HHAs are void; (2) a declaration that CBP's policy of using HHAs is unlawful; (3) an injunction prohibiting CBP from conditioning the return of seized property on a claimant signing an HHA in the future; and (4) an injunction prohibiting CBP from continuing to hold seized

property for failure to sign an HHA and requiring the return of any property seized and retained under these circumstances.

Nwaorie does not have standing to request declarations from the court rendering "void and unenforceable any [HHA]s executed by class members as a condition of CBP returning their seized property" or declaring the use of HHAs unlawful given that Nwaorie never entered into an HHA. Generally, "[i]n order to satisfy the standing requirement of an 'actual or imminent' injury, a plaintiff generally must submit to the challenged policy before pursuing an action to dispute it." *Davis v. Tarrant Cnty.*, 565 F.3d 214, 220 (5th Cir. 2009). Not only did Nwaorie never submit to the HHA policy she seeks to challenge, but she has offered no argument that it would have been futile for her to submit to the challenged policy before pursuing this lawsuit.[2] *LeClerc v. Webb*, 419 F.3d 405, 413 (5th Cir. 2005) ("[S]trict adherence to the standing doctrine may be excused when a policy's flat prohibition would render submission futile."). And while the declarations Nwaorie seeks from the court would remedy harm to class members who did submit to the HHA policy, Nwaorie "'may not seek redress for injuries done to others.'" *Ellison v. Connor*, 153 F.3d 247, 255 (5th Cir. 1998) (quoting *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166 (1972)).

Nwaorie similarly may not request an order "[e]njoin[ing] the Defendants from continuing to condition the return of seized property to class members' signing [HHA]s or any other agreements demanding that class members waive their constitutional or statutory rights, or incur new legal liabilities." The Government is correct that Nwaorie has not met the standard

---

[2] Moreover, the Government submitted evidence, in the form of an affidavit from the Director of CBP's Fines, Penalties, and Forfeiture division, averring that any individual who CBP has asked to sign an HHA in connection with seized property "may request that CBP modify the terms of such agreement or void [the agreement]."

for prospective equitable relief with respect to this claim because an order enjoining CBP from conditioning the return of seized property on a claimant's signing an HHA in the future would have done nothing to address the harm that Nwaorie was suffering at the time of her complaint, as CBP had already imposed such an ultimatum on her. *See City of Los Angeles v. Lyons*. 461 U.S. 95, 105-06 (1983). As in *Lyons*, where the court denied an injunction because plaintiff's assertion of only a past injury did not "establish a real and immediate threat" that he would again be illicitly choked by officers, here Nwaorie's injury from being forced to choose between signing the HHA and the return of her property would not be addressed by an injunction prohibiting CBP from subjecting future plaintiffs to the same choice and she has not established "a real and immediate" threat that her personal injury will reoccur. *Id.* Any threat that CBP would seize her property again and seek to press an HHA on her is speculative.

Finally, Nwaorie lacks standing to seek an injunction prohibiting "Defendants from continuing to hold seized property because a class member has not signed a[n] [HHA]," and requiring "Defendants to immediately return all such seized property." Nwaorie similarly failed to demonstrate an ongoing harm or the "immediate threat" of future injury in association with these requests for relief. *Funeral Consumers*, 695 F.3d at 342; *Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 174 (5th Cir. 2018). By the time Nwaorie filed her complaint, CBP had initiated her refund process and ultimately returned her property just 19 days later. Because CBP was in fact in the process of returning her property at the time Nwaorie filed her complaint, Nwaorie only alleges a past injury that is insufficient to establish standing to pursue the equitable relief she seeks on behalf of her proposed class. *Lyons*, 461 U.S. at 102 (equitable relief cannot be obtained based on past injury alone, unaccompanied by "present adverse effects."). And as noted above, Nwaorie may not seek class relief for harm done to others. *Ellison*, 153 F.3d at 255.

No. 19-20706

Because Nwaorie has not alleged a cognizable injury in support of the equitable relief she seeks through her individual and class claims related to the HHA policy, the district court properly dismissed[3] these claims. We affirm the district court's dismissal of these claims.

## 2. Sovereign Immunity

In addition to the return of her and the putative class members' properties, Nwaorie seeks the interest that she contends the Government owes for the time the various properties were in the Government's possession. The Government argues that sovereign immunity precludes Nwaorie's individual and class claims for interest.[4] Nwaorie responds that sovereign immunity is no obstacle to her claim for interest because while sovereign immunity bars a claim for pre-judgment interest, her claim is for disgorgement of undeserved profits, which is not subject to sovereign immunity.

Nwaorie's argument runs counter to the holdings of the majority of sister circuits that have considered this issue. The First, Second, Third, Eighth, and Tenth Circuits have all held that sovereign immunity bars claims for interest accrued on property the Government seizes but ultimately returns. *Larson v. United States*, 274 F.3d 643, 645 (1st Cir. 2001); *Ikelionwu v. United States*, 150 F.3d 233, 239 (2d Cir. 1998); *United States v. Craig*, 694 F.3d 509, 513 (3d Cir. 2012); *United States v. $7,990.00 in U.S. Currency*, 170 F.3d 843, 845-46 (8th Cir. 1999); *United States v. $30,006.25 in U.S. Currency*, 236 F.3d 610, 614 (10th Cir. 2000). These courts reasoned that awarding interest in this situation would amount to requiring the Government to

---

[3] Given CBP's apparent voluntary cessation of its policy of conditioning the return of property on claimants' signing HHAs, these claims are also likely moot.

[4] Sovereign immunity generally does not bar a claim for injunctive relief. *See Larson v. Domestic & Foreign Comm. Corp.*, 337 U.S. 682 (1949); *Dugan v. Rank*, 372 U.S. 609 (1963); 5 U.S.C. § 702.

pay pre-judgment interest absent an express abrogation of immunity. And they have roundly rejected the notion that simply terming the interest as disgorgement of profits renders sovereign immunity inapplicable. *See Craig*, 694 F.3d at 512 ("Craig next argues that equity requires the Government to disgorge the interest. Craig cites no authority—nor are we aware of any—for the proposition that equity can abrogate the sovereign immunity of the United States."); *$7,990.00 in U.S. Currency,* 170 F.3d at 845 ("Sovereign immunity does not depend upon whether the government benefitted from its conduct in question."); *$30,006.25 in U.S. Currency,* 236 F.3d at 613 ("[R]echaracterizing an interest award as a disgorgement of profits circumvents the effect of sovereign immunity.").

While a handful of circuits have taken a contrary view based on a theory of fundamental fairness, *see, e.g., United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 505 (6th Cir. 1998); *.United States v. $277,000 U.S. Currency*, 69 F.3d 1491, 1498 (9th Cir. 1995), the approach of the minority of circuits is inconsistent with the Supreme Court's instructions in *Shaw* that "the no-interest rule cannot be avoided simply by devising a new name for an old institution." *Library of Cong. v. Shaw*, 478 U.S. 310, 321 (1986); *$ 30,006.25 in U.S. Currency,* 236 F.3d at 614 (citing *Shaw,* 478 U.S. at 321 ("Courts lack the power to award interest against the United States on the basis of what they think is or is not sound policy." (quotation omitted))). The Supreme Court has clearly stated that interest may not be awarded against the Government absent a waiver of sovereign immunity, and no such waiver exists here. We accordingly hold that Nwaorie's claim for interest is barred by sovereign immunity and thus not justiciable.

## B. Nwaorie's Individual Due Process Claim

Nwaorie also brings a procedural due process claim; she contends that CBP placed her in a screening database that has resulted in her being targeted

for, and subjected to, intrusive airport screenings.  Further, she asserts that she was never provided notice that she was included in the database and cannot meaningfully contest her inclusion in the database through the available administrative remedy, DHS TRIP.

This court uses a two-step analysis to determine whether an individual's procedural due process rights have been violated.[5]  First, the court "asks whether there exists a liberty or property interest which has been interfered with by the" Government action. *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010) (quoting *Kentucky Dep't. of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)).  If so, "the court examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Id.*  Here, Nwaorie's due process claim is properly dismissed under the first prong of this analysis as she has failed to adequately plead that the Government has interfered with a cognizable liberty or property interest.

Nwaorie asserts four liberty interests: (1) the ability to travel internationally and domestically without harassment; (2) having a reputation that is not impaired by "false government stigmatization;" (3) being free from discrimination based on her race and national origin; and (4) being free from unreasonable searches and seizures.  Each will be addressed in turn.

"The right to travel is a 'liberty' interest within the meaning of the Fifth Amendment." *Hernandez v. Cremer*, 913 F.2d 230, 237 (5th Cir. 1990).  The question, then, is whether the Government has deprived or "interfered" with this interest. *Meza*, 607 F.3 at 399.  In characterizing this right to travel,

---

[5] The Government argues that Nwaorie has not exhausted the available administrative review—DHS TRIP—and should be required to do so before availing herself of judicial review.  But courts maintain discretion in applying the jurisprudential exhaustion requirement, *Taylor v. U.S. Treasury Dep't.*, 127 F.3d 470, 475 (5th Cir. 1997), and here judicial efficiency is best served by resolving her claim now.

the Supreme Court has distinguished between the right of interstate versus international travel. Whereas the right of the former is "virtually unqualified," the right of the latter is "no more than an aspect of the 'liberty' protected by the Due Process Clause." *Califano v. Torres*, 435 U.S. 1, 4 n.6 (1978). And even interstate travel is subject to "statutes, rules, or regulations" that do not "unreasonably restrict movement." *Saenz v. Roe*, 526 U.S. 489, 499, (1999) (internal quotation marks omitted); *see also Haig v. Agee*, 453 U.S. 280, 306 (1981) (international travel "subject to reasonable governmental regulation").

In *Abdi v. Wray*, the Tenth Circuit held that heightened scrutiny of an airline passenger who had been placed on a terrorist watchlist did not amount to a deprivation of the passenger's travel rights. 942 F.3d 1019, 1032 (10th Cir. 2019). There, the passenger underwent extra security measures and was delayed for forty-eight hours as he tried to fly home from overseas. *Id.* The Tenth Circuit concluded that these additional burdens were simply "impediments" that "reasonably encumbered" only one mode of travel. *Id.*; *see also Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999) ("burdens on a single mode of transportation do not implicate the right to travel"). Similarly, the Sixth Circuit held that delays of up to an hour due to additional screening did not infringe on the liberty interest in travel. *See Beydoun v. Sessions*, 871 F.3d 459, 468 (6th Cir. 2017). Significantly, the Sixth Circuit also held that, despite plaintiffs' claim that the delays deterred them from traveling, the "minor disturbance" from the delay did not actually deny the right to travel. *Id.* (citing *Pollack v. Duff*, 793 F.3d 34, 45 (D.C. Cir. 2015 (explaining that if a law's "effect upon [a plaintiff's] willingness to travel, *i.e.*, exercise her right to travel, is 'negligible[,]'" then it "does not warrant scrutiny under the Constitution"); *see also Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140-41 (2d Cir. 2010) (travel restriction was "minor" and did not deny right to travel when "the most-inconvenienced plaintiff was delayed a little over one day").

In view of the caselaw, Nwaorie's allegations do not rise to level of showing that her right to travel was infringed.  Other than stating generally that she is subject to "additional" or "intrusive" or "invasive" screening, she has not characterized the nature or duration of her airport security screenings, much less how they how they have interfered with her actual ability to travel.[6]  The only specific searches she actually describes in her complaint are incidents in (1) December 2017, when a CBP officer allegedly slit open her leather purse during a search and (2) October 2018, when an officer opened but did not properly close a bottle of body wash during an inspection, and the substance later spilled on and ruined some of Nwaorie's luggage.  While having property damaged or destroyed during two searches may be aggravating, Nwaorie evidently has continued to use air travel, and she does not allege that any other form of transportation has been limited.  *See Abdi*, 942 F.3d at 1032; *Miller*, 176 F.3d at 1205.  This is not enough to show that her right to travel has been infringed.  *See, e.g.*, *Beydoun*, 871 F.3d at 468.

Nwaorie's next contention is that her interest in having a reputation free from "false stigmatization" has been infringed.  "To show a due process violation under this theory, 'a . . . plaintiff [must] show stigma plus an infringement of some other interest."  *Doe 1-7 v. Abbott*, 945 F.3d 307, 313 (5th Cir. 2019) (brackets in original) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 935–36 (5th Cir. 1995)).  That stigma was inflicted "on a person's reputation by a [Government] official, without more, does not infringe upon a protected liberty interest."  *Id.* (quoting *Blackburn*, 42 F.3d at 935-36).  Nwaorie simply makes the conclusory allegation that her reputation was

---

[6] In her opening and reply briefs, Nwaorie asserts that she been deterred from traveling due to the invasive screenings.  However, her opening brief does not cite any portion of the record, and the record cite in her reply brief is to a page on her complaint that does not mention lost travel or the inability to travel.  Nor, it seems, does any other part of her complaint.  *See* FED. R. APP. P. 28 (requiring parties to provide citations to the record).

damaged by being subjected to additional screening, but she has not explained how this is so. Moreover, this court has noted "the almost complete absence of any stigma attached to being subjected to search at a known, designated airport search point." *United States v. Skipwith*, 482 F.2d 1272, 1275 (5th Cir. 1973). While stigma could conceivably attach depending on the nature and scope of the screening, Nwaorie has not set forth allegations that show she has suffered from stigma.

Even assuming that Nwaorie demonstrated stigma, she does not adequately allege the infringement of another interest. *See Doe 1-7*, 945 F.3d at 313. To the extent she argues that she has been subjected to false stigma, she does not identify the action by the Government that was "false." Besides her asserted interests in travel (which, as explained above, was not infringed), the only other interests she identifies are the freedom from being subjected to discrimination on the basis of race and national origin and from unreasonable searches and seizures. And for the reasons below, she does not make out a plausible claim that either of these interests were infringed. Nwaorie thus does not show a due process violation under the stigma-plus test. *See id.*

Nwaorie makes a passing reference to an interest in being free from discrimination based on race or national origin. However, because she does not attempt to explain how CBP's inspection policy infringes on these interests, she has expressly abandoned her equal protection claim. Accordingly, she does not plausibly allege that the Government interfered with these interests.

Similarly lacking in support is Nwaorie's contention that the Government infringed her interest in being free from unreasonable searches. She acknowledges that she received more intensive screening only after she failed to abide by currency reporting requirements. Moreover, she does not provide argument on this point; her initial and reply briefs merely mention this

interest without explaining how it was infringed.  This court has also noted that routine border searches—those that "do not seriously invade a traveler's privacy"—require no suspicion.  *United States v. Cardenas*, 9 F.3d 1139, 1148 n.3 (5th Cir. 1993).  And the "standards for initiating a search of a person at the boarding gate should be no more stringent than those applied in border crossing situations."  *Skipwith*, 482 F.2d at 1276.  Last, though Nwaorie's Statement of Facts in her brief recounts two occasions in which her property was ruined as a result of CBP inspections, she does not contend that this damage to her belongings infringed her liberty interests.  Nwaorie has therefore not adequately pleaded that the Government violated her Fourth Amendment rights.

## IV.

For the foregoing reasons, we AFFIRM the district court's dismissal of Nwaorie's claims.